**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 21-cv-24007-WILLIAMS/DAMIAN

GPM INDUSTRIAL, INC.,

      Plaintiff,

v.

UNITED STATES CITIZENSHIP
AND IMMIGRATION SERVICES, et al.,

      Defendants.

_____/

**REPORT AND RECOMMENDATION ON**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF NOS. 40 & 46]**

THIS CAUSE is before the Court on Plaintiff, GPM Industrial, Inc.'s ("GPM Industrial" or "Plaintiff"), Motion for Summary Judgment [ECF No. 40], filed May 12, 2022, and Defendants' Cross-Motion for Summary Judgment [ECF No. 46], filed June 2, 2022. This matter was referred to the undersigned by the Honorable Kathleen M. Williams, United States District Judge, for a Report and Recommendation. [ECF No. 55]. *See* 28 U.S.C. § 636(b)(1)(B).

The undersigned has reviewed the parties' memoranda [ECF Nos. 40, 42, 44, and 48], the pertinent portions of the record, and all relevant authorities and is otherwise fully advised in the premises. For the reasons set forth below, it is recommended that Plaintiff's Motion for Summary Judgment [ECF No. 40] be denied and that Defendants' Cross-Motion for Summary Judgment [ECF No. 46] be granted.

**I.    BACKGROUND**

GPM Industrial filed this lawsuit pursuant to the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.* ("APA"), against Defendants, United States Citizenship & Immigration

Services ("USCIS") and Ur M. Jaddou, in her official capacity as Director of USCIS[1] (collectively, "Defendants"), seeking review of Defendants' decision to deny an Immigrant Petition for Alien Worker (Form I-140) submitted by GPM Industrial on behalf of the beneficiary, Gustavo Gamboa Villaroel ("Gamboa"), seeking to classify him as a multinational executive in order to obtain an employment-based, first preference ("EB-1") visa on his behalf, pursuant to the Immigration and Nationality Act ("INA").

Before discussing the facts presented, it is helpful to understand the relevant provisions of the INA governing the petition at issue upon which Plaintiff's claims are based.

### A. Statutory And Regulatory Background

Each year, USCIS grants a limited number of EB-1 visas to certain "multinational executives and managers" who serve "in a capacity that is managerial or executive." 8 U.S.C. § 1153(b)(1)(C); *see also Saga Overseas, LLC v. Johnson*, 200 F. Supp. 3d 1341, 1346 (S.D. Fla. 2016) (Cooke, J.); *Khamisani v. Holder*, No. H-10-0728, 2011 WL 1232906, at *3 (S.D. Tex. Mar. 31, 2011). Eligibility for the EB-1 visa is governed by the INA and its related implementing regulations.

Pursuant to the statute, preference is given to an alien who, in the three years preceding the alien's application for classification and admission into the United States, "has been employed for at least [one] year by a firm or corporation or other legal entity or an affiliate or subsidiary thereof" and "seeks to enter the United States in order to continue to render services to the same employer or to a subsidiary or affiliate thereof in a capacity that is managerial or executive." 8 U.S.C. § 1153(b)(1)(C); *see also Sunshine Co. Food Distrib., Inc. v.*

---

[1] Ms. Jaddou was automatically substituted for Defendant Kenneth T. Cuccinelli as the current Director of USCIS pursuant to Federal Rule of Civil Procedure 25(d).

2

*USCIS*, 362 F. App'x 1, 3 (11th Cir. 2010). Therefore, under the INA, a petitioner must establish both that (1) it has a qualifying relationship with a foreign legal entity, such as a parent-subsidiary relationship, and (2) the beneficiary is employed in a position that is primarily managerial or executive.

A United States employer seeking to hire an alien in this visa category must file a Form I-140 Petition with USCIS on behalf of the intended beneficiary. *See* 8 U.S.C. § 1153(b)(1)(C); 8 C.F.R. § 204.5(j)(1). The employer must provide evidence that the beneficiary will be employed in a "managerial" or "executive" capacity, which shall specifically include a detailed description of the services to be performed by the beneficiary, among other evidence. 8 C.F.R. § 214.2(l)(3)(ii).

The INA defines "managerial capacity" as follows:

> [A]n assignment within an organization in which the employee primarily-
>
> (i)    manages the organization, or a department, subdivision, function, or component of the organization;
>
> (ii)    supervises and controls the work of other supervisory, professional, or managerial employees, or manages an essential function within the organization, or a department or subdivision of the organization;
>
> (iii)    if another employee or other employees are directly supervised, has the authority to hire and fire or recommend those as well as other personnel actions (such as promotion and leave authorization) or, if no other employee is directly supervised, functions at a senior level within the organizational hierarchy or with respect to the function managed; and
>
> (iv)    exercises discretion over the day-to-day operations of the activity or function for which the employee has authority. A first-line supervisor is not considered to be acting in a managerial capacity merely by virtue of the supervisor's supervisory duties unless the employees supervised are professional.

8 U.S.C. § 1101(a)(44)(A).

The INA defines "executive capacity" as follows:

> [A]n assignment within an organization in which the employee primarily-
>
> > (i)     directs the management of the organization or a major component or function of the organization;
> >
> > (ii)    establishes the goals and policies of the organization, component, or function;
> >
> > (iii)   exercises wide latitude in discretionary decision-making; and
> >
> > (iv)   receives only general supervision or direction from higher level executives, the board of directors, or stockholders of the organization.

8 U.S.C. § 1101(a)(44)(B).

Regarding a qualifying relationship, the statute mandates that an individual petition be accompanied by "[e]vidence that the petitioner and the organization which employed or will employ the alien are qualifying organizations as defined in paragraph (l)(l)(ii)(G) of [the INA]." 8 C.F.R. § 214.2(1)(3). Section 214.2(l)(l)(ii), in turn, states, in relevant part:

> (G) Qualifying organization means a United States or foreign firm, corporation, or other legal entity . . . [that]
>
> (1)    Meets exactly one of the qualifying relationships specified in the definitions of a parent, branch, affiliate or subsidiary specified in paragraph (l)(l)(ii) of this section;

The statute's definition of "subsidiary" provides:

> Subsidiary means a firm, corporation, or other legal entity of which a parent owns, directly or indirectly, more than half of the entity and controls the entity; or owns, directly or indirectly, half of the entity and controls the entity; or owns, directly or indirectly, 50 percent of a 50-50-joint venture and has equal control and veto power over the entity; or owns, directly or indirectly, less than half of the entity, but in fact controls the entity.

8 C.F.R. § 214.2(l)(ii)(K).

Further, staffing levels are a relevant factor in determining managerial or executive capacity:

> If staffing levels are used as a factor in determining whether an individual is acting in a managerial or executive capacity, the Attorney General shall take into account the reasonable needs of the organization, component, or function in light of the overall purpose and stage development of the organization, component, or function. An individual shall not be considered to be acting in a managerial or executive capacity (as previously defined) merely on the basis of the number of employees that the individual supervises or has supervised or directs or has directed.

8 U.S.C. § 101(a)(44)(C).

Significantly, the statutory and regulatory requirements differ between immigrant and nonimmigrant visas. Each petition is separate and independent, and USCIS must adjudicate each on its own merit. The fact that a beneficiary was previously deemed eligible as an L-1A nonimmigrant visa[2] does not automatically establish the beneficiary's eligibility as an immigrant. *See Matter of Church Scientology Int'l*, 19 I. & N. Dec. 593, 597 (BIA 1988); *see also National Hand Tool Corp. v. Pasquarell*, 889 F.2d 1472, 1476 (5th Cir. 1989) (Congress did not intend for USCIS "to be bound by its initial determination that an employee is a manager [or executive] for purposes of granting a temporary visa when an application for a permanent visa is filed"). Further, the benefits of an immigrant visa–permanent residence–are distinct from those provided by a nonimmigrant visa–only temporary residence.

A decision to deny an I-140 petition, despite the earlier grant of an L-1A visa, does not violate the APA. *See* 8 U.S.C. § 1361 ("Whenever any person makes application for a visa or any other document required for entry, or makes application for admission, or otherwise

---

[2] The L–1A visa allows a petitioner temporary admission to the United States for an employee, as an intracompany transferee, who, "within the preceding three years has been employed abroad for one continuous year by a qualifying organization . . . [and is] to be employed by a parent, branch, affiliate, or subsidiary of that employer in a managerial or executive capacity, or in a position requiring specialized knowledge." 8 C.F.R. § 214.2(l)(l)(i).

attempts to enter the United States, the burden of proof shall be upon such person to establish that he is eligible to receive such visa or document[.]"). Certainly, "many cases where I-140 petitions were denied involved aliens who already enjoyed classification L nonimmigrant status." *Q Data Consulting, Inc. v. I.N.S.*, 293 F. Supp. 2d 25, 30 (D.D.C. 2003) (citing *IKEA U.S., Inc. v. U.S. Dep't of Justice, I.N.S.*, 48 F. Supp. 2d 22, 23 (D.D.C. 1999); *Fedin Bros. Co. v. Sava*, 724 F. Supp. 1103, 1108 (E.D.N.Y. 1989)). In some cases, "L-1A classification[s] are simply approved in error, especially nonimmigrant visa petitions that the INS spends less time deciding than I-140 petitions." *Id.* Therefore, USCIS "is not required to approve an application on the basis of a prior erroneous approval where eligibility is not demonstrated." *Hakimuddin v. Dep't of Homeland Sec.*, No. CIV 4:08–CV–1261, 2009 WL 497141, at *6 (S.D. Tex. 2009) (citations omitted).

With this statutory and regulatory framework in mind, the undersigned considers the facts of this case and the bases for GPM Industrial's challenge to the denial of its Petition submitted on behalf of Mr. Gamboa.[3]

### B. Factual Background

Plaintiff, GPM Industrial, is a U.S. company. GPM Industrial alleges it is the subsidiary of the Venezuelan entity GPM Instrumentacion y Control C.A. ("GPM Venezuela"). [ECF No. 11 ("Am. Compl.")[4] at ¶ 22]. Defendants dispute that GPM Industrial

---

[3] The facts set forth herein are undisputed unless otherwise noted. The parties filed statements of material facts, as confirmed by the administrative record, in support of their motions. [ECF Nos. 43 and 45].

[4] Although the Court relies only on the administrative record to make its determinations in reviewing an agency decision, the undersigned provides the above allegations from the Amended Complaint as general context. *See* 5 U.S.C. § 706; *see also Camp v. Pitts*, 411 U.S. 138, 142 (1973) ("[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.").

has demonstrated that it is a subsidiary of GPM Venezuela. *See* Def.'s Mot. at 16–18. Mr. Gamboa, a foreign national, founded GPM Venezuela in 1990. GPM Venezuela provides services and products for the instrumentation and control of industrial processes in various industrial sectors. Am. Compl. at ¶ 23. Mr. Gamboa later incorporated GPM Industrial in the United States in 1999 to support GPM Venezuela by sourcing instrumentation products and liaising with instrumentation manufacturers in the United States. *Id.* at ¶¶ 37–38. Gamboa has served as GPM Industrial's President and CEO since 2015. *Id.* at ¶ 39. He also served as President and a member of the Board of Directors of GPM Venezuela for twenty-five years. *Id.* at ¶ 26.

In May 2015, GPM Industrial successfully petitioned for Gamboa to work in a temporary status as an intracompany transferee holding an executive or managerial position in accordance with 8 U.S.C. § 1101(a)(15)(L) ("L-1A visa"). *Id.* at ¶ 42. On August 26, 2015, USCIS approved Gamboa's non-immigrant L-1A visa, and in November 2015, GPM Industrial transferred Gamboa to the United States to work as its President and CEO. *Id.* at ¶ 44. Gamboa's L-1A visa was approved for the three-year period from August 26, 2015 to June 30, 2018. (R. 77).[5]

### 1. The First Denial of Plaintiff's I-140 Petition On Behalf of Mr. Gamboa

On May 24, 2017, GPM Industrial submitted a Form I-140 Petition to USCIS seeking to classify Mr. Gamboa as a multinational executive in order to obtain an EB-1 immigrant visa pursuant to 8 U.S.C. § 1153(b)(1)(C) (the "Petition"). (R. 53–58); *see also* Am. Compl. at ¶ 52. In support of the Petition, GPM Industrial submitted a statement which included

---

[5] The Certified Administrative Record ("CAR") was filed under seal with the Court on April 22, 2022 by USCIS. [ECF No. 36]. Citations to the CAR herein are to "(R. __)."

Gamboa's position title, a description of his daily duties and the percentage of time spent on each task, descriptions of the job titles, duties, and education levels for each subordinate employee, and descriptions of the independent contractors purportedly used by GPM Industrial and GPM Venezuela. (R. 60–72). The Petition also included organizational charts for both entities and Gamboa's resume. (R. 73–75, 147); *see also* Am. Compl. at ¶ 53. According to the general job description provided in the Petition, Mr. Gamboa, as President and CEO of GPM Industrial, would be responsible for "company-wide business development in strategic planning, sales[,] and leadership." (R. 56).

On September 22, 2018, USCIS issued a Notice of Intent to Deny ("NOID") that set forth deficiencies in the Petition and provided GPM Industrial with an opportunity to submit additional evidence.[6] (R. 34–47). GPM Industrial responded to the NOID in October 2018 by providing additional evidence in support of the Petition on behalf of Mr. Gamboa. (R. 966–1389). The additional submissions included organizational charts, stock certificates, a stock transfer ledger, and other supporting documents. *Id.* On October 2, 2019, USCIS denied the Petition (the "First Denial"). (R. 27–33).

Thereafter, on April 30, 2020, GPM Industrial commenced this action by filing a Complaint in the United States District Court for the District of Columbia challenging the First Denial on grounds the denial was arbitrary and capricious and a violation of GPM Industrial's right to due process (the "First Action"). [ECF No. 1].

---

[6] Issuing a NOID is an interim step USCIS takes prior to issuing its final decision that allows a petitioner one more opportunity to address the bases upon which USCIS anticipates denying the petition. *See American Energy Cos. v. USCIS*, No. 20-CV-02049, 2022 WL 17882087, at *2 (N.D. Ga. Aug. 1, 2022).

**2.   The Second Denial Of Plaintiff's I-140 Petition On Behalf Of Mr. Gamboa**

On June 17, 2020, USCIS, on its own motion, reopened GPM Industrial's Petition, pursuant to 8 C.F.R. § 103.5(a)(5), and issued a Request for Evidence ("RFE") seeking additional evidence regarding Gamboa's executive capacity in the United States and abroad, GPM Industrial's ability to pay Gamboa the proffered wage, and GPM Industrial's qualifying corporate relationship with GPM Venezuela. (R. 13–23, 25). On November 10, 2020, GPM Industrial responded to the RFE and provided additional evidence in support of the Petition, including an updated organizational chart for GPM Industrial, expert affidavits, a sworn declaration from Gamboa, recommendation letters, financial statements and tax returns from 2018 through 2020, work emails authored by Gamboa, payroll records, corporate ownership documents for both entities, and proof of wages paid to Gamboa from 2016 to 2019. (R. 1416–2819); *see also* Am. Compl. at ¶ 80.

On February 2, 2021, USCIS again denied the Petition on the grounds GPM Industrial failed to prove, by a preponderance of the evidence, that Gamboa was fully qualified for the benefit sought (the "Second Denial"). (R. 2–12). Specifically, USCIS determined that Plaintiff did not establish that: (1) GPM Industrial has a qualifying corporate relationship with GPM Venezuela; (2) GPM Industrial will continue to employ Gamboa in a qualifying capacity as an executive; or (3) GPM Venezuela had employed Gamboa in an executive capacity abroad. Thereafter, on March 11, 2021, GPM Industrial amended its Complaint to challenge the Second Denial as arbitrary and capricious under the APA. [ECF No. 11].

**3.   The Denial Of Plaintiff's I-129 Petition For A New L-1A Visa**

As detailed in the Order from the District Court for the District of Columbia, GPM Industrial also applied to extend Gamboa's L-1A visa before its expiration on June 30, 2018. USCIS denied that application on August 30, 2019. On November 12, 2019, Plaintiff

submitted a Form I-129 Petition for Nonimmigrant Worker to obtain a new L-1A nonimmigrant classification on Gamboa's behalf. On March 2, 2020, USCIS denied the I-129 petition. GPM Industrial then filed a second lawsuit in the District of Columbia on April 30, 2020, challenging the Defendants' decision to deny the I-129 petition (the "Second Action"), and designated the two actions as related pursuant to Federal Rule of Civil Procedure 42(a).[7] After reopening the I-129 petition and issuing another RFE, USCIS ultimately denied the second I-129 petition on January 28, 2021. [ECF No. 18].

On November 5, 2021, the District Court for the District of Columbia consolidated the two actions and transferred them to the Southern District of Florida.[8] *Id.*

### C. Procedural Background Of The Instant Lawsuit

The action was opened in this Court on November 15, 2021. [ECF No. 19]. On February 14, 2022, the parties filed a Joint Scheduling Report, which was later amended on May 3, 2022. [ECF Nos. 29 and 37]. On February 25, 2022, GPM Industrial filed a Motion to Strike Defendants' Affirmative Defenses. [ECF No. 30]. Thereafter, GPM Industrial filed its Motion for Summary Judgment and Statement of Material Facts on May 12, 2022 [ECF Nos. 40 and 41], and on June 2, 2022, Defendants filed their Cross-Motion for Summary Judgment and Statement of Material Facts [ECF Nos. 42 and 43]. GPM Industrial filed a Corrected Statement of Material Facts on June 23, 2022. [ECF No. 45].

---

[7] The District Court stayed Defendants' obligation to respond to the Amended Complaint pending resolution of a motion to consolidate and motion to transfer the two actions. *See* Minute Order, dated April 3, 2021.

[8] On January 21, 2022, Plaintiff filed a notice of voluntary dismissal of the Second Action challenging the denial of the second I-129 petition. *See GPM Industrial, Inc. v. United States Citizenship & Immigration Services*, No. 21-cv-24009-MGC, [ECF No. 27]. Thus, only the First Action, the instant lawsuit, remains pending.

On September 13, 2022, the Court adopted and affirmed the undersigned's Report and Recommendation on Plaintiff's Motion to Strike Defendant's Affirmative Defenses, granted the Motion to Strike, and struck paragraphs 1 and 2 of Defendants' Affirmative Defenses. [ECF No. 54].

The parties' cross-motions for summary judgment are fully briefed and ripe for adjudication.

## II.   THE MOTIONS BEFORE THE COURT

In its Motion for Summary Judgment, GPM Industrial contends that USCIS ignored evidence establishing a qualifying corporate relationship between GPM Industrial and GPM Venezuela, as well as evidence establishing that Gamboa worked in an executive capacity for GPM Venezuela and will continue to work for GPM Industrial in the same capacity. *See* Mot. at 11–24. Based on these allegations, GPM Industrial challenges the Second Denial of the Form I-140 Petition as arbitrary and capricious in violation of the APA and requests the Court order USCIS to approve the I-140 Petition. *Id.* at 24–25.

In their Cross-Motion for Summary Judgment, Defendants assert USCIS properly concluded that GPM Industrial failed to meet its burden of proof to establish that Gamboa qualifies as a multinational manager or executive pursuant to 8 U.S.C. § 1153(b)(1)(C). Resp. at 10. Specifically, USCIS claims the record supports its denial of the I-140 Petition based on GPM Industrial's failure to establish that: (1) a qualifying relationship exists between GPM Industrial and Gamboa's foreign employer, GPM Venezuela; (2) Gamboa's duties and the organizational structure and staffing of GPM Industrial will support Gamboa as an executive and that he will continue to be employed in such qualifying capacity; and (3) Gamboa's employment abroad with GPM Venezuela was executive in nature. *Id.* Defendants request

the Court find as a matter of law that GPM Industrial failed to satisfy its burden of demonstrating that the denial of the I-140 Petition was arbitrary and capricious.

### III.    APPLICABLE LEGAL STANDARDS

Whereas motions for summary judgment are normally governed by Federal Rule of Civil Procedure 56, "when a party seeks review [before a district court] of agency action under the APA, the district judge sits as an appellate tribunal," and "[t]he entire case on review is a question of law." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001). Therefore, in such a case, the standard in Rule 56, pursuant to which summary judgment is appropriate when there are no genuine factual disputes, does not apply. *Fulbright v. McHugh*, 67 F. Supp. 3d 81, 89 (D.D.C. 2014), *aff'd sub nom. Fulbright v. Murphy*, 650 F. App'x 3 (D.C. Cir. 2016) (explaining that although "summary judgment is an appropriate procedure for resolving" APA challenges, "the standard set forth in Rule 56(a) does not apply"); *see also Fla. Fruit & Vegetable Ass'n v. Brock*, 771 F.2d 1455, 1459 (11th Cir. 1985); *Brinklys v. Johnson*, 175 F. Supp. 3d 1338, 1349–50 (M.D. Fla. 2016), *aff'd* 702 F. App'x 856 (11th Cir. 2017) ("[S]ummary judgment is the mechanism for deciding whether as a matter of law the agency action is supported by the administrative record and is otherwise consistent with the APA standard of review.").

The APA "sets forth the full extent of judicial authority to review executive agency action for procedural correctness." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009). Pursuant to the APA, a reviewing court "shall hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "The arbitrary and capricious standard is exceedingly deferential." *Defs. of Wildlife v. United States Dep't of Navy*, 733 F.3d 1106, 1115 (11th Cir. 2013) (internal quotation omitted); *see also Khamisani*, 2011 WL

1232906, at *3 (noting "the standard [of review] is a highly deferential one which presumes that the agency's action is valid"). Indeed, "'even in the context of summary judgment, an agency action is entitled to great deference.'" *Sunshine Co. Food Distrib.*, 362 F. App'x at 2 (quoting *Preserve Endangered Areas of Cobb's History, Inc. v. United States Army Corps of Eng'rs*, 87 F.3d 1242, 1246 (11th Cir. 1996)). "The court's role is to ensure that the agency came to a rational conclusion, 'not to conduct its own investigation and substitute its own judgment for the administrative agency's decision.'" *Id.* (quoting *Sierra Club v. Van Antwerp*, 526 F.3d 1353, 1360 (11th Cir. 2008)). Therefore, the court is limited to deciding, "on the basis of the record the agency provides, whether the action passes muster under the appropriate APA standard of review." *Preserve*, 87 F.3d at 1246 (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985)). Put differently, "this narrow scope of review forbids a reviewing court from substituting its judgment for that of the agency, and mandates affirmance if a rational basis exists for the agency decision, even if the court might otherwise disagree." *Khamisani*, 2011 WL 1232906, at *3.

> An agency's action may be arbitrary and capricious:
>
> where the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Lujan*, 733 F.3d at 1115. Upon review of the administrative record, "[t]he court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). Pursuant to Eleventh Circuit precedent, "an agency fails to give reasoned consideration to the record evidence when it misstates the contents of the record, fails to adequately explain any illogical

13

conclusions, or provides justifications for its decision which are unreasonable or do not respond to any arguments in the record." *Liu v. United States Att'y Gen.*, 440 F. App'x 718, 719 (11th Cir. 2011). As relevant here,

> [t]o prevail on summary judgment, where the agency denies the visa petition on multiple grounds, it need only show that one of the grounds was sufficient to deny the petition. *See Z-Noorani, Inc. v. Richardson*, 950 F. Supp. 2d 1330, 1337 (N.D. Ga. 2013) (citations omitted). For the plaintiff to succeed, he "must establish that each of these bases was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law." *Id.*

*Diamond Miami Corp. v. U.S.C.I.S.*, No. 18-24411-CIV, 2019 WL 4954807, at *2 (S.D. Fla. Oct. 8, 2019) (Scola, J.). "In making its decision, 'the agency is not required to discuss every piece of evidence, so long as it gives reasoned consideration to the evidence submitted.'" *Id.* (internal alteration adopted) (quoting *Liu*, 440 F. App'x at 719).

"Thus, if the agency considers the factors and articulates a rational relationship between the facts and the choice made, its decision is not arbitrary and capricious." *Delta Found. Inc. v. United States*, 303 F.3d 551, 563 (5th Cir. 2002). The "agency's decision need not be ideal, so long as the agency gave minimal consideration to relevant facts contained in the record." *Id.*

## IV.   DISCUSSION

With the foregoing in mind, the undersigned considers the challenged agency action—the denial of GPM Industrial's I-140 Petition on behalf of Mr. Gamboa—and the agency's stated grounds for its decision. As noted above, USCIS set forth three reasons in support of its denial of the Petition, specifically that GPM Industrial failed to establish that (1) Gamboa will be employed in a primarily executive capacity in the United States; (2) Gamboa was employed abroad in a primarily executive capacity; and (3) a qualifying corporate relationship exists between GPM Venezuela and GPM Industrial. Def.'s Cross-Mot. at 10–11. GPM

Industrial challenges these reasons as arbitrary and capricious under the APA. *See generally* Pl.'s Mot.

Based on a review of the record, the undersigned finds that the record supports USCIS's decision to deny the Petition on the first two grounds, both based on whether Gamboa was and is to be employed in a primarily executive capacity, but that it does not support the agency's decision as to the third ground, the qualifying relationship between GPM Industrial and GPM Venezuela. The parties' arguments regarding each of these grounds are discussed below.

### A. Qualifying Executive Capacity

USCIS determined that GPM Industrial failed to establish by a preponderance of the evidence that Gamboa's past position with GPM Venezuela and his position with GPM Industrial are primarily executive in nature.

For an immigrant employee to obtain a multinational executive or manager visa, the petitioner must establish that the beneficiary's duties will be primarily executive or managerial. 8 C.F.R. § 214.2(l)(3)(ii). "Often it is necessary to consider other factors, including the petitioner's organizational hierarchy and its staffing, as these factors are accurate indicators of a company's ability to relieve the beneficiary from having to focus time primarily on the performance of non-qualifying operational tasks." *Delta Talent, LLC V. Wolf*, 448 F. Supp. 3d 644, 653 (W.D. Tex. 2020) (citing *Fedin Bros.*, 724 F. Supp. at 1108).

### 1. USCIS's Consideration Of Plaintiff's Evidence

#### a. Mr. Gamboa's Proposed Job Description And Duties

In support of the I-140 Petition, GPM Industrial provided a statement detailing Gamboa's job description, day-to-day duties, and the percentage of time spent daily and weekly on each task in both his position abroad and in the United States. (R. 60–72).

15

USCIS determined that Gamboa's job description "lacks sufficient detail" and "resembles a general template." *Id.* at 6. According to the agency's decision, the job description "does not provide substantive, verifiable details that can be reliably correlated to activities documented in the record" and "contains references to employees who do not exist." *Id.* Specifically, USCIS pointed out that the job description indicates Gamboa "will meet with [GPM Industrial's] accountants, accounting staff, logistics and operations research analysts, and operations manager; however, [GPM Industrial's] organizational chart does not include these positions in its corporate structure." *Id.* USCIS also noted that some of the evidence GPM Industrial submitted in response to the RFE, dated June 17, 2020, "are not persuasive as they post-date May 24, 2017, the date of filing and priority date, which are one in the same." *Id.* at 6–7 (citing 8 C.F.R. §§ 103.2(b)(1), (12); *Matter of Katigbak*, 14 I. & N. Dec. 45, 49 (Reg'l Comm'r 1971)).

### b.   GPM Industrial's Organizational Chart And Staffing

USCIS identified several issues with the organizational charts submitted by GPM Industrial. USCIS's decision points out that GPM Industrial's organizational chart depicts Gamboa as President and CEO in a position over a general manager, which is occupied by Gabriel D'Pascuale, who is also a member of GPM Industrial's Board of Directors. (R. 7). According to USCIS's interpretation of the evidence, the organizational chart indicates that Gamboa "will receive direction from one of his subordinates." *Id.* (citing 8 C.F.R. § 101(a)(44)(B), which provides that a beneficiary "must receive only general supervision or direction from higher-level executives, the board of directors, or stockholders of the organization"). USCIS also identified several discrepancies regarding the title of Mr. D'Pascuale throughout the record evidence, in which he is identified as Director, General Manager, President, and Vice-President of GPM Industrial. (R. 9).

16

USCIS also found that GPM Industrial's organizational chart is "exaggerated, misleading, or over inflated as it depicts a corporate structure consisting of unrelated corporations and an individual . . . as independent contractors." *Id.* USCIS concluded that "the record, however, does not contain evidence corroborating [GPM Industrial's] use of independent contractors" in order to relieve Gamboa of performing non-qualifying duties. *Id.* at 8.

Based on these findings, USCIS concluded that GPM Industrial "did not establish that it has the requisite staffing and organizational structure to support [Mr. Gamboa] as an executive," and, accordingly, that "the evidence does not establish that [GPM Industrial] will continue to employ [Gamboa] in a qualifying capacity as an executive." *Id.* at 10.

### c.   *Evidence Of Mr. Gamboa's Duties Abroad*

Similarly, USCIS pointed to several inconsistencies in the evidence submitted by GPM Industrial to demonstrate that Mr. Gamboa's past employment abroad with GPM Venezuela was primarily executive in nature. (R. 10–12).

The agency's decision outlines all of the information submitted by GPM Industrial, including Gamboa's duties, staffing and organizational charts, horizontal pay slip reports, monthly payment receipts, and wage or salary receipts. *Id.* According to USCIS, the descriptions of Gamboa's duties with GPM Venezuela "lack sufficient detail" and "are so general they could describe virtually any executive position with any company." *Id.* at 11. USCIS explained the information regarding his duties "provide only vague information that focuses on [Gamboa]'s discretionary authority, but says little about the actual tasks he will perform." *Id.* Further, USCIS concluded that some of the duties were ordinary "operational duties" and "[t]here is no indication on the organizational chart that there were subordinates who relieved [Gamboa] from these operational duties such as directing financial or budget

activities to fund operations and reviewing budgets for approval." *Id.* USCIS identified other inconsistencies between the organizational chart, which identifies 40 employees, and the bi-weekly horizontal pay slip reports, which indicate that GPM Venezuela's organizational structure consisted of 17 to 25 employees from January 1, 2014 to October 31, 2014. *Id.* at 12. Based on these findings, USCIS similarly concluded that GPM Industrial did not establish that Gamboa's duties abroad were primarily executive in nature. *Id.*

### 2.  USCIS's Articulated Reasons For Its Decision

As noted above, the question before the Court is whether USCIS failed to "articulate a rational relationship between the facts and the choice made" in the decision. *Delta Found.*, 303 F.3d at 563. Only if the agency did not, may its decision be found to be arbitrary, capricious, or an abuse of discretion. A review of the administrative record indicates that USCIS gave reasoned consideration to the evidence submitted by GPM Industrial. The next question, then, is whether there is at least some "rational connection" between the record and the agency's decision to deny GPM Industrial's I-140 Petition. *Q Data Consulting*, 293 F. Supp. 2d at 28; *see also Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1404–1405 (D.C. Cir. 1995) (finding that an agency's decision need not be "be a model of analytical precision to survive a challenge," but it "must minimally contain a 'rational connection between the facts found and the choice made'"). The record reflects that USCIS articulated rational bases for its determination that Gamboa's past and future employment responsibilities are not primarily executive in nature. (R. 4–12).

USCIS explained its conclusion that the evidence submitted by GPM Industrial with the Petition and in response to the RFE fails to adequately demonstrate how Gamboa's past and future duties are primarily executive in nature.

### a. *USCIS's Stated Issues With Evidence Of Mr. Gamboa's Job Descriptions*

USCIS explained that the job descriptions and specific duties submitted by GPM Industrial were lacking in specificity. (R. 6–7). Even after GPM Industrial provided additional details regarding these duties in its response to the RFE (R. 64–69), USCIS found the information provided to be inadequate in explaining how the duties Gamboa performed abroad and would continue to perform in the United States are primarily executive in nature. Moreover, USCIS stated that some of the supporting documentation, such as the company's meeting minutes dated July 12, 2019, were not persuasive as they post-date the date of filing of the I-140 Petition, May 24, 2017. *Id.* at 7. (citing *Matter of Izummi*, 22 I. & N. Dec. 169, 175 (BIA 1998) (noting that USCIS "cannot consider facts that come into being only subsequent to the filing of a petition"); *Matter of Bardouille*, 18 I. & N. Dec. 114, 178 (BIA 1981)).

USCIS considered GPM Industrial's general job descriptions and duties to be carried out by Gamboa and determined that they fall short of the detailed descriptions necessary to determine whether an employee's actual duties will be primarily executive in nature. *See* 8 C.F.R. § 204.5(j)(2). The undersigned agrees that general descriptions are inadequate to satisfy the implementing regulations because, as stated in the agency's decision here, "otherwise meeting the definitions would simply be a matter of reiterating the regulations." (R. 6 (citing *Fedin Bros.*, 724 F. Supp. at 1108 ("The actual duties themselves reveal the true nature of the employment.")). USCIS explained that the evidence submitted by GPM Industrial fails to establish that Gamboa's actual duties will be primarily executive in nature, as defined by 8 U.S.C. § 1101(a)(44)(B) and the implementing regulations, and that, therefore, GPM Industrial failed to meet its burden in demonstrating that Gamboa is eligible for the requested relief. The undersigned finds the explanation is supported by the record.

Therefore, USCIS's determination that GPM Industrial did not establish that Gamboa's job duties are primarily executive in nature was not arbitrary, capricious, or an abuse of its discretion.

### b.   USCIS's Stated Issues With Mr. Gamboa's Duties And Responsibilities

USCIS also found that some of Gamboa's tasks are of a nonqualifying nature. (R. 11). For example, the following duties and responsibilities performed by Gamboa while he was employed abroad by GPM Venezuela are more operational or administrative in nature: "reviewing budgets for approval" and "directing financial or budget activities to fund operations." *Id.* As USCIS explained, these duties, and possibly others, are non-executive, and the evidence submitted failed to demonstrate that there were subordinates who relieved Gamboa from performing these operational duties. *Id.* "By requiring that the duties be primarily managerial or executive, the express language of the regulations excludes workers whose job involves a mix of management and non-management responsibilities." *Khamisani*, 2011 WL 1232906, at *7. Here, it is apparent that Gamboa's prior and current job duties involve a mix of managerial and administrative tasks, and, therefore, it was neither arbitrary nor capricious for USCIS to deny GPM Industrial's Form I-140 Petition on behalf of Gamboa on this ground.

### c.   USCIS's Stated Issues With GPM Industrial's Staffing

USCIS next found that the record fails to establish that GPM Industrial has the staffing necessary to relieve Gamboa from having to spend a majority of his time performing non-qualifying tasks. USCIS considered the organizational charts provided by GPM Industrial and determined "the record does not contain evidence corroborating the [GPM Industrial's] use of independent contractors." (R. 8). Specifically, USCIS pointed out that GPM Industrial's "depiction of independent contractors in its corporate structure is misleading as

these services are comparable . . . to routine business expenses: bookkeeping, Internet, janitorial, lease agreement, marketing campaigns, payroll processing, telephone, utilities, and water and sewage, to name a few." *Id.* Based on the evidence submitted, USCIS concluded that GPM Industrial "did not establish that it has the requisite staffing and organizational structure to support [Gamboa] as an executive." *Id.* at 10.

In *Sunshine Company Food Distributor*, the Eleventh Circuit held that the district court did not err in granting summary judgment in favor of USCIS after the agency "found that the majority of [the beneficiary's time] could not be spent acting in an executive or managerial capacity because [the beneficiary] had to fulfill all of the non-managerial and non-executive tasks associated with the financial, sales, technology, and legal departments." 362 F. App'x at 3–4; *see also Q Data Consulting*, 293 F. Supp. 2d at 25 (holding that the beneficiary's former and proposed duties were not primarily managerial for purposes of a Form I-140 petition based, in part, on an "absence of evidence that a sufficient 'subordinate staff' will 'relieve her from performing managerial nonqualifying duties'").

Likewise, despite GPM Industrial's contention that the founder and head of a multimillion-dollar corporation, like Mr. Gamboa, is nothing other than an "executive," USCIS considered the job descriptions, duties, and organizational charts provided by GPM Industrial and determined that a majority of Gamboa's time could not possibly be spent acting in an executive capacity since GPM Industrial failed to demonstrate that it has the requisite staffing and organizational structure to relieve Gamboa from performing operational and administrative tasks. Pl.'s Mot. at 16. *See Lan Tian Dev., LLC v. Mayorkas*, No. 20-0286, 2022 WL 3358107, at * 2 (W.D. Wash. Aug. 15, 2022) (granting summary judgment for the agency where USCIS found the petitioner's "small size, few staff members, and organizational structure 'calls into question whether there was sufficient staff at the time the petition was

filed to relieve the beneficiary of the performance of non-executive tasks"). USCIS's conclusion that many non-executive tasks would fall on Gamboa due to the lack of supporting positions within the company is supported by the record, and, therefore, USCIS's denial of GPM Industrial's I-140 Petition on this ground was not arbitrary, capricious, or an abuse of discretion.

Accordingly, based on the foregoing, the undersigned finds that the portion of USCIS's decision determining that GPM Industrial had not shown that Gamboa previously performed and will be performing work in a primarily executive capacity was not arbitrary and capricious. USCIS's Motion for Summary Judgment may be granted on this basis alone. *See Diamond Miami Corp.*, 2019 WL 4954807, at *2 (on a motion for summary judgment, the agency need only show that one of the grounds was sufficient to deny the petition). Nevertheless, the undersigned also addresses Plaintiff's challenge to the agency's determination regarding the qualifying corporate relationship between GPM Industrial and GPM Venezuela for the sake of completeness.

### B. Qualifying Corporate Relationship

In its decision, USCIS concluded that GPM Industrial failed to show by a preponderance of the evidence that GPM Industrial, a Florida corporation, and GPM Venezuela, a Venezuelan entity, have a qualifying legal relationship under the INA's definition and the accompanying regulation. (R. 4). *See* 8 U.S.C. § 1153(b)(C); 8 C.F.R. 204.5(j)). In making this determination, USCIS considered the evidence submitted by GPM Industrial, including the Articles of Incorporation, stock certificates, and tax documents for the entities. (R. 4).

USCIS identified several discrepancies in GPM Industrial's supporting documents. Specifically, USCIS noted that the Articles of Incorporation indicate that "[GPM Industrial]

is authorized to have 100 shares of common stock outstanding at any time," however, stock certificates numbered one to five indicate that Gamboa's foreign employer, GPM Venezuela, and Gamboa, himself, "were issued 101 and 199, respectively, shares of [GPM Industrial's] common stock, representing a total of 300 shares of outstanding common stock." *Id.* According to USCIS, the record "does not contain evidence demonstrating [GPM Industrial] authorized the issuance of additional shares of common stock beyond its initial authorization of 100." *Id.* USCIS also noted other discrepancies between the amended IRS Schedule G (Form 1120) for 2015 through 2017 and the stock certificates regarding the ownership interest (percentage of ownership of GPM Industrial) as between GPM Venezuela and Gamboa. (R. 237, 1036, 1084, 1135).

In its Motion for Summary Judgment, GPM Industrial avers that USCIS "refused to recognize" its ownership structure—51% by GPM Venezuela and 49% by Gamboa—indicating that Plaintiff, GPM Industrial, is the "subsidiary" of GPM Venezuela, the foreign parent. Mot. at 12. According to GPM Industrial, USCIS ignored an opinion letter by an expert in Florida business law, Joseph A. Yolofsky, submitted in its RFE response, in which Mr. Yolofsky explains that USCIS "mistakenly calculated 'a total of 300 shares of outstanding common stock' by *adding together* the total shares listed on "[s]tock certificates numbered one to five.'" *Id.* at 13 (quoting R. 4, 21) (emphasis in original). Plaintiff also points to a stock ledger tracking the ownership of the 100 shares originally issued by the company. Mot. at 14. Plaintiff asserts the stock ledger shows that GPM Venezuela owned a total of 51 shares and Gamboa a total of 49 shares of the ownership interests of GPM Industrial at the time the Petition was filed, thereby making GPM Industrial a qualifying "subsidiary" of GPM Venezuela, a foreign entity. *Id.* at 15–16.

23

In the Cross-Motion for Summary Judgment, USCIS asserts that it reasonably concluded that GPM Industrial failed to establish a qualifying corporate relationship with GPM Venezuela and that it properly considered the evidence in the record regarding the purported relationship between the two entities. Cross-Mot. at 25. USCIS argues that GPM Industrial's supporting documents "conflict with the other information contained in the record." For example, the federal income tax return (Form 1120) for year 2015 reflects that Gamboa and GPM Venezuela each owned 50% of voting stock. (R. at 1036). The amended returns for 2015 through 2017 reflect that Gamboa owned 49% of voting stock and that GPM Venezuela owned 51% of voting stock of GPM Industrial. (R. at 237, 1084, 1135). Therefore, USCIS maintains that "the record is inconclusive regarding the corporate relationship between [GPM Industrial] and GPM Venezuela." *Id.* at 27.

"Ownership and control are factors that must be examined in determining whether a qualifying relationship exists between United States and foreign entities for purposes of this visa classification." *Delta Talent*, 448 F. Supp. 3d at 652. Ownership pertains to "the direct or indirect legal right of possession of the assets of an entity with full power and authority to control, and control means the direct or indirect legal right and authority to direct the establishment, management, and operations of an entity." *Id.* (citing *Matter of Church Scientology Int'l*, 19 I. & N. Dec. 593, 595 (BIA 1986)); *see also* 8 C.F.R. § 214.2(1)(4). Control may be "de jure" by reason of ownership of 51 percent of outstanding stocks of the other entity or it may be "de facto" by reason of control of voting shares through partial ownership and possession of proxy votes. *Matter of Hughes*, 18 I. & N. Dec. 289 (BIA 1982).

As evidence of a company's qualifying relationship, stock certificates alone are insufficient evidence to determine whether a stockholder maintains ownership and control of a corporate entity. *Delta Talent*, 448 F. Supp. 3d at 653. USCIS must examine the corporate

stock certificate ledger, stock certificate registry, corporate bylaws, and the minutes of relevant annual shareholder meetings to determine the total number of shares issued, the exact number issued to the shareholder(s), the subsequent percentage ownership, and its effect on corporate control. *Id.* The petitioner must disclose all agreements relating to voting interests, the distribution of profit, the management and direction of the company, and any other factors affecting actual control of the company. *Id.* (citing *Matter of Siemens Med. Sys., Inc.*, 19 I. & N. Dec. 362 (BIA 1986)). In *Matter of Church Scientology International*, the Board of Immigration Appeals (BIA) held that to determine whether ownership and control of both entities is the same, one must determine "whether the same individual(s) or organization owns enough of the assets of both entities to enable the individual(s) or organization to control the management and operations of both entities." 19 I. & N. Dec. at 595–96. The petitioner bears the burden of proof to establish it qualifies for the benefit sought under the immigration laws. *Matter of Ho*, 19 I. & N. Dec 582, 291 (BIA 1988).

After carefully reviewing the certified administrative record, the undersigned concludes that Defendants' decision that there is no qualifying corporate relationship between GPM Industrial and GPM Venezuela is not supported by the evidence, and is, therefore, arbitrary and capricious as a matter of law. As noted above, the Court looks to "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Judulang v. Holder*, 565 U.S. 42, 53 (2011).

The decision was either not based on the agency's reasoned consideration of all the relevant evidence presented to it and the applicable factors or was based on an erroneous interpretation of the evidence. Although the decision refers to stock certificates numbered one through five, it makes no mention of the stock ledger submitted by GPM Industrial in support

of its assertion that there have always been 100 shares of common stock outstanding since the original issuance by the company in 1999.

The stock ledger indicates that GPM Industrial originally issued 100 shares of stock and demonstrates all the transactions representing the transfer of those original 100 shares. (R. 2535–2536). The record evidence reflects that initially, in October 1999, Gamboa owned 100% of the voting stock as represented by stock certificate number one and memorialized in the stock ledger. (R. 2533). Then, in November 2014, after surrendering stock certificate number one, Gamboa and GPM Venezuela each owned 50% of the voting stock, as reflected in stock certificate numbers two and three. (R. 2531–2532). Thereafter, in February 2015, the stock ledger demonstrates that Gamboa owned 49% and GPM Venezuela owned 51% of the voting stock, which corresponds to stock certificate numbers four and five. (R. 2529–2530). This ownership structure is corroborated by other evidence in the record submitted by GPM Industrial, including its amended tax returns for 2015 through 2017 (R. 237, 1084, 1135), and amended Articles of Incorporation (R. 2502–2508).

GPM Industrial's Motion for Summary Judgment and the evidence in the record resolve the inconsistencies USCIS noted in its decision regarding the ownership structure of GPM Industrial, and it appears USCIS did not give reasoned consideration to that evidence or, at least, has not explained the inconsistency between the evidence and its findings.

The undersigned finds that GPM Industrial has demonstrated by a preponderance of the evidence that it is a subsidiary of GPM Venezuela, the foreign parent company, and, therefore, that there exists a qualifying (parent-subsidiary) relationship between the two corporate entities as required by 8 C.F.R. § 214.2(l)(1)(ii). Viewing the evidence in the record in accordance with the deference to which the agency's action is entitled, it does appear the

agency failed to consider the evidence discussed above and that the explanation for its decision on this issue runs counter to the evidence.

Accordingly, based on the foregoing, the undersigned finds that the portion of USCIS's decision determining that Plaintiff had not shown a qualifying corporate relationship between GPM Venezuela and GPM Industrial was arbitrary and capricious.

## V.    RECOMMENDATION

Based on the foregoing, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment [ECF No. 40] be **DENIED** and that Defendants' Cross-Motion for Summary Judgment [ECF No. 46] be **GRANTED**.

The parties will have fourteen (14) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Kathleen M. Williams, United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida, this 10th day of February 2023.

_____
MELISSA DAMIAN
UNITED STATES MAGISTRATE JUDGE


Copies to:
Kathleen M. Williams, *U.S. District Judge*
Counsel of Record